IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT S. FASTOV,

      Plaintiff,

v.                                         1:97cv0578 (PLF)

CHRISTIE'S INTERNATIONAL PLC;
CHRISTIE, MANSON & WOODS, LTD.,
and CHRISTIE'S, INC.,

      Defendants.

_____

ORDER AWARDING ATTORNEYS' FEES
AND EXPENSES TO DEFENDANTS

      Before the court is the magistrate judge's report and recommendation docketed January 24, 2008.  Doc. 148.  The magistrate judge recommends that the plaintiff, Robert S. Fastov ("Fastov"), be ordered to pay to the defendants attorneys' fees and expenses of $110,000.  The parties have responded (docs. 149, 151-154) to the magistrate judge's report and recommendation, and Fastov has requested (doc. 155) a hearing.

      In a previous order (doc. 136), this court granted the defendants' motion for attorneys' fees and expenses.  The court explained the reasons for its order as follows:

> [T]he claims in this case arose when Plaintiff, an art dealer, unsuccessfully attempted to sell a painting through Christie, Manson & Woods, Ltd. ("CMW"), a London-based art auctioneer.  After learning that CMW declined to auction his painting, Plaintiff sent CMW a 79-page, single-spaced typewritten letter (with hundreds of pages of attachments), threatening legal action.  In particular, Plaintiff explained that, unless CMW agreed to his settlement proposal ($168K), he was prepared to file

a lawsuit for compensatory damages in excess of $265,000 and "punitive damages in an amount to be determined, but considerably in excess of $1,000,000." Biester Decl., Ex. 14 at 1.  He also suggested that "the cash outlays that Christie's will, to a legal certainty, have to make (and will <u>not recover</u>, even if Christie's wins) to defend the litigation will be approximately $221.3K (very conservatively understated) or (more realistically) well in excess of $300K." <u>Id.</u> at 3 (emphasis in original).  Characterizing his statements not as threats but as simple statements of business fact, Plaintiff gave CMW three weeks in which to respond to his letter.  Plaintiff went on to state:

> [I]f you decide for tactical purposes to delay your response beyond my three week deadline, Christie's costs of settlement will increase appreciably.  If you decide to wait to see if I actually file the suit before approaching me to discuss settlement, you will find that the chances of achieving settlement are virtually nil, unless Christie's is prepared to reimburse me for all of my costs to date of settlement and pay all of my compensatory damages, which will be well in excess of $265K, and an extremely high percentage of the amount of punitive damages prayed for in the complaint, which shall be in the millions of dollars.

<u>Id.</u> at 5.

In concluding his lengthy letter, Plaintiff wrote:

> Do not bet against my inclination, will, ability, experience, and tenacity to file and successfully maintain <u>F v. C</u> through to its successful conclusion.  It will be the worst and most costly conclusion and bet of your life.  The settlement proposals and the purposes of this letter are inherently pacific in nature.  If you and Christie's force me to go to war, those who have litigated for, with, and against me will tell you that I am extremely tough, intelligent, and tenacious.  I give no quarter and ask none, and above all, I will take any and all actions, both within and without the courtroom, that do not violate the legal rules of professional conduct, necessary to achieve Christie's unconditional surrender.

<u>Id.</u> at 79.

When his threats proved unavailing, Plaintiff filed a 225-page complaint

against CMW and two related entities (collectively, "Defendants") in this Court. During the course of the litigation, the Court more than once admonished Plaintiff for abusing the litigation process. For example, the Court at one time entered an order stating:

> In response to defendants' motion for summary judgment, plaintiff has attempted to file a 59-page opposition, a 90-page declaration in support of his opposition, a 461-page statement of disputed and undisputed facts, and three volumes of exhibits totaling approximately 1,500 pages. A first-year law student is taught that a filing in support of or in opposition to any motion should be tailored to achieve the paramount goal of assisting the Court in rendering its decision. Plaintiff's filing does the opposite. It is an abuse of the litigation process.

Doc. 89 at 1. After explaining that "Plaintiff's well-documented proclivity in this case to engage in obstructionist litigation tactics at the expense of the Court, opposing counsel, and even his own attorneys will be tolerated no longer," the Court warned Plaintiff that "from the date of this Order forward, Plaintiff will be personally fined and sanctioned every time the Court determines that he has abused the litigation process–regardless of whether he is represented by counsel or is proceeding *pro se.*" Id. at 2-3. In a later order, the Court struck from the record a lengthy document filed by Plaintiff, explaining that "[s]uch a filing, particularly in light of previous warnings to plaintiff, is an abuse of the litigation process and a waste of the Court's time." Doc. 95 at 1. The parties were then informed that "the Court will postpone its consideration of sanctions against [Plaintiff] . . . until after defendants' motion for summary judgment has been resolved." Id. at 3. Still later, the Court granted Defendants' summary judgment motion, noting that Plaintiff's claims to damages defied all credulity, making sense "only when viewed in the context of his open threats to achieve 'Christie's unconditional surrender.' " Biester Decl., Ex. 14 at 79. In conclusion, the Court explained that–in its view–Plaintiff's "unsupported, unmeritorious claims . . . were initiated in bad faith with the intent to subject [Defendants] to 'the worst and most costly' litigation in [Defendants'] experience." Doc. 115 at 24.

. . . .

Here, the record amply demonstrates that Plaintiff first initiated, then prosecuted this lawsuit in bad faith for the purpose of harassing Defendants. His egregious behavior, which unreasonably and vexatiously

Case No. 1:97cv0578 (PLF)

multiplied these proceedings, clearly warrants the imposition of sanctions under section 1927 as well as under the Court's inherent authority. As a sanction, Defendants have requested that Plaintiff be ordered to pay their reasonable attorney's fees "in an amount to be demonstrated by defendants and determined by the Court." Doc. 121 at 22. The Court finds such request appropriate.

After this court granted the defendants' motion for fees and expenses, the matter was referred to the magistrate judge for a report and recommendation as to the amount of fees and expenses to be awarded. After reviewing the submissions of the parties and hearing argument on December 18, 2007, the magistrate judge determined that the defendants incurred reasonable attorneys' fees and expenses totaling $630,043.32. He specifically found that such fees were based on (1) reasonable hourly rates for both attorneys and legal assistants; (2) a reasonable number of hours expended in defending the litigation; and (3) reasonable (both in type and amount) expenses.

At the hearing before the magistrate judge, Fastov made unsubstantiated statements about his ability to pay the fees and expenses found to be reasonable. He also submitted a declaration in which he made various assertions about his financial status. He did not submit tax returns, brokerage statements, bank records, or any other documents to corroborate his assertions. The magistrate judge was nonetheless "sensitive" to Fastov's financial situation and to "the concern that sanctions would be a hollow gesture if he is unable to pay." The magistrate judge accordingly recommended that the court order Fastov to pay $110,000 in fees and expenses, less than one-fifth of the amount reasonably expended by the defendants.

After the magistrate judge's report and recommendation was entered, the

defendants filed "conditional" objections. The defendants represented that they "would be prepared to acquiesce in [the magistrate judge's] exercise of discretion to award it only $110,000, and not the full amount which Christie's actually incurred and which he found to be reasonable—but only if Plaintiff likewise accepts [the magistrate judge's] Report and Recommendation and does not seek to have it reduced." The defendants submitted, however, that a just sanction for Fastov's misconduct should be no less than $300,000.

Fastov soon after filed 45 pages of objections, much of the document consisting of 77 single-spaced, often lengthy footnotes. Attached to his objections are *hundreds* of pages of exhibits. Fastov thus continues to engage in the very conduct that, in part, has resulted in sanctions being awarded against him.

Like the magistrate judge, this court is not unmindful that Fastov has *said* that his ability to pay is limited. He has not, however, submitted corroborating evidence to substantiate his financial status. Fastov's egregious conduct, moreover, has caused the defendants to spend—now clearly unnecessarily so—in excess of $600,000 defending this baseless lawsuit. Fastov's prolixity in verbiage and meanness in actions have wasted the time and energy of at least three federal judicial officers, resources that could have been utilized in the dispatch of legitimate court business. No court would have long tolerated such conduct on the part of a bona fide *pro se* party; and certainly any judge would have been justified in referring a lawyer who so conducted himself to the disciplinary process of the cognizant bar association. This case presents the worst of both.

Fastov himself does not question the reasonableness of the defendants' claim for fees and costs.  Instead, he seeks to avoid responsibility by now claiming a reduced income.  Yet, it is clear that he has defiantly shunned every opportunity to mitigate his loss.  The magistrate judge's compassion, and the defendants' offer to accept a reduced amount have been met by Fastov's continued strident rejection of reason.  Indeed, his contempt for the entire litigation process in this lawsuit, initiated by him and vexatiously still maintained by him, militates against financially punishing the defendants further.

As his own words have clearly established, the plaintiff initiated this lawsuit with the bad faith intent to subject the defendants to "the worst and most costly" litigation in the defendants' experience.  Now Fastov must pay for vexatiously pursuing frivolous claims, for prosecuting his case in bad faith, for multiplying the proceedings unnecessarily, and for generally engaging in conduct that degrades the entire judicial system.

Here, there is no public wrong to be righted, no class of victims seeking redress, no constitutional liberty being vindicated.  Instead, a greedy individual, with the advantage of a legal education and a claimed litigation expertise, has initiated and maintained this lawsuit, which anyone with a modicum of common sense would have soon realized was without merit.  Nevertheless, with myopic vengeance, Fastov has pursued the defendants, using and abusing them and the judicial process.  Fastov could have stopped this senseless bleeding at any time, but after being publicly warned and chastised for his outrageous conduct, has persisted in inflicting more wounds.

Such an individual, such a party, such a lawyer has forfeited his entitlement to minimize his exposure to paying for the harm that he alone has caused.  Under these unusual circumstances, the court finds that the defendants are entitled to be made whole for the entirety of their costs and fees expended in defending this malicious lawsuit.

Accordingly, it is ORDERED:

1. The magistrate judge's report and recommendation (doc. 148) is ADOPTED—except as to the amount to be awarded to the defendants—and is incorporated by reference into this order.

2. Fastov shall pay to the defendants the total amount of $630,043.32, including $66,030.46 in expenses and $564,012.86 in attorneys' fees, as a sanction for his bad faith, vexatious, and oppressive conduct in this case.

3. Fastov's request for a hearing (doc. 155) is DENIED.

4. The clerk of the court shall enter judgment accordingly.

5. No motion or petition for rehearing will be entertained.

DONE AND ORDERED this ___25th___ day of __April__, 2008.

s/ William Stafford
WILLIAM STAFFORD
SENIOR UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF FLORIDA
SITTING BY DESIGNATION